IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:18-798-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| SUMMER SMITH | ) | |
| _____ | ) | |

This matter is before the court on the defendant's *pro se* motions for a reduction in her sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF Nos. 433, 438). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with her current medical problems, constitute extraordinary and compelling reasons for her immediate release. The defendant also contends that changes to her family circumstances have occurred regarding the care of her three minor children which would constitute an extraordinary and compelling reason.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

## STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever

> is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden

3

to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on

their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government has conceded that the defendant has properly exhausted her administrative remedies. Thus, the court will proceed to review the matter on the merits.

## DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus.

5

*See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In her motions (ECF Nos. 433, 438), the defendant contends that she is entitled to immediate release because she suffers from obesity and asthma. She next claims that her sister is no longer able to care for her minor children due to her sister's health problems and financial situation.

The government concedes that the defendant presents the risk factor of obesity. However, the government argues that the defendant no longer presents an extraordinary and compelling reason for compassionate release because she has declined vaccination against COVID-19.

A medical report provided by the defendant notes that she had juvenile onset asthma and has used inhalers since she was young.

The court respectfully disagrees with the government in regard to the defendant's medical condition.[2] Obesity and asthma have been identified by the CDC as medical conditions that "might" be complicated is an individual contracts the COVID virus. For this reason, the court determines that the defendant has demonstrated an extraordinary and compelling reason for consideration of release.

---

[2] The Presentence Report noted the defendant's statement at the time the PSR was prepared that she was in "overall good physical health." (ECF No. 392 at ¶ 54). It also revealed that she stands 5'2" and weighs 175 pounds.

However, the court's inquiry does not end here. Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the 18 U.S.C. § 3553(a) factors, and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.* Beginning in at least August 2017 and continuing through August 2018, the defendant was part of a drug trafficking conspiracy which transported and distributed significant quantities of "ice" methamphetamine and heroin in South Carolina. Her co-defendants obtained cocaine, ice, and heroin from Mexican cartel sources in Atlanta, Georgia and then transported the drugs to South Carolina for distribution. Some of the illegal drugs brought to South Carolina resulted in multiple drug overdoses during May 2018, which prompted the investigation.

The defendant is one of 6 defendants names in a 3-Count Indictment filed on August 21, 2018. The defendant was named in Count 1, which charged conspiracy to possess with intent to distribute and to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, 100 grams or more of a mixture or substance containing a detectable amount of heroin, and 500 grams or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

Pursuant to a written plea agreement (ECF No. 273), the defendant pleaded guilty to Count 1. She was ultimately held accountable for more than 2,680 grams of crystal methamphetamine ("ice"); 6,900 grams of cocaine; and more than 1,000 grams of heroin.[3]

The Presentence Report (PSR) (ECF No. 392) determined that the defendant's total offense level was 31 and her criminal history category was I.  This yielded an advisory Guideline range of 108 to 131 months incarceration.   If the court had not found that the defendant was eligible for the safety valve provision of 18 U.S.C. § 3553(f), the defendant would have faced a Guideline sentence of 120 to 131 months pursuant to U.S.S.G. § 5G1.1(b).

At the sentencing hearing, this court gave the defendant a below-Guidelines sentence of 87 months which was equivalent to a 2-level variance.  The court considered the defendant's minimal criminal history, family ties, employment record, role in the offense, drug dependence, and presentence rehabilitation efforts evidenced by her successful completion of drug counseling and continued sobriety on pretrial supervision.

Also, the defendant's three minor children for whom she needs to care, were all born prior to or during the defendant's involvement in the criminal activity in this case. The fact that the children needed a caregiver was an important consideration in this court's lenient sentence imposed in the first place.  (*See* ECF No. 397 at 17–20, Transcript of Sentencing

---

[3] Because differing controlled substances were involved, they were converted to the converted drug weight equivalent in order to establish an aggregate amount pursuant to U.S.S.G. § 2D1.1, Application Note 8(b).  The total converted drug weight for the defendant was 56,037.7 kilograms.

Hearing on Aug. 5, 2020) (Indicating that the court would allow the defendant the benefit of the safety valve and issue a below-Guidelines variance to account for the fact that the defendant had three young children and also elderly family members who had Alzheimers and other special needs).

The defendant filed an appeal of her sentence and conviction. The Fourth Circuit Court of Appeals affirmed this court's decision and judgment, with the mandate issued on April 20, 2021.

The defendant has served approximately 16 months of her 87-month sentence and is currently scheduled to be released in December 2026. She is housed at FPC Alderson in West Virginia.

2. *History and Characteristics of the Defendant*. The defendant is 30 years old. She is single and has three minor children who were aged 8, 7 and 1 at the time the PSR was prepared. The youngest of the defendant's children is from a relationship with one of her co-defendants. At the time of her incarceration, the defendant was residing in Gaston, South Carolina with her children and her mother, Marlin Powell. Ms. Powell is a co-defendant in this case who is also currently incarcerated.

The defendant reported that she has two sisters and was reared by both of her parents in South Carolina. She recalled having a good upbringing and a "close" family. She began to experiment with marijuana when she was 16 years old and continued use of that product into adulthood. She began using cocaine at age 17 and continued to use it until 2014. She

also experimented from time to time with methamphetamine. Commendably, she stopped using drugs and drinking alcohol when she learned that she was pregnant.

The defendant has a high school education and past work experience as a warehouse worker at Home Depot and Amazon.

*Post Sentencing Conduct*

The defendant has no disciplinary infractions on her record while at the BOP. She has taken numerous First Step Act courses, as well as courses in basic parenting, cartoon, writing and poetry, and safety/awareness/housekeeping. Her work detail notes that she served as a hospital maintenance worker, and unit orderly.

The defendant states that upon her release she plans to be her grandmother's full-time caregiver. Her sister is taking care of the grandmother now, but is becoming to difficult for her to handle because she requires constant care. The defendant states that her God mother will allow her to stay at her next door rental house until she can get things back in order.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence. At sentencing, the defendant's criminal history category was I. However, as the government points out in its opposition memorandum, although the defendant had little or no criminal history at the time of her sentencing, she was very much involved in the conspiracy charged in this case. Methamphetamine, heroin, and cocaine are all powerfully addictive substances.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and her associates, her imposed sentence was and is in line with the other co-defendants.

*Additional Arguments Raised by the Defendant*

The defendant contends that she has had a change in her family situation such that her sister cannot take care of her youngest child due to the sister's health problems and financial situation. The sister also cares for their grandmother who is 74 and has Alzheimer's disease. The defendant's mother, Marlin Powell, is also incarcerated. The defendant states that her three minor children have been separated between family members.

The defendant's three children are now approximately 9, 8, and 2 years of age. The children were in the defendant's care when she committed the crime of conviction in this case. The defendant voluntarily associated herself with a major drug distribution network knowing full well that she bore significant family responsibilities. The defendant contends that one of her sisters is experiencing health problems. However, the PSR indicates that the defendant has two sisters. No explanation is given about the availability of the other sister or relatives to help with the care of the children.

In sum, the court gave the defendant a significant "break" at sentencing to account for family responsibilities. She committed the crime at issue while these parenting responsibilities existed. To give her a further reduction would be to treat her more leniently than co-defendant's who do not have children or elderly and infirm family members and would thus create unwarranted disparity in sentencing.

In a late-filed submission, the defendant points out that she has completed a team paper and taken additional classes. She also points out that COVID "is attacking unvaccinated and vaccinated people." The court has reviewed the certificates for additional educational and vocational courses. But the court finds these efforts, though commendable, do not overcome the § 3553(a) factors discussed herein.

CONCLUSION

For the foregoing reasons, the court determines that, even if the defendant has demonstrated an extraordinary and compelling reason due to her medical conditions, her release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. She has served only a small portion of her sentence which was greatly reduced from the original Guideline sentence. The motions (ECF Nos. 433, 438) are respectfully denied.[4]

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

March 3, 2022
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")